AO 91 (Rev. 11/11)   Criminal Complaint (approved by AUSA Matthew T. Newcomer)

# UNITED STATES DISTRICT COURT
для the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOSE HERNANDEZ | ) | Case No. 21-mj-156 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  Dec. 2019 to May 2020  in the county of  Philadelphia  in the
Eastern  District of  Pennsylvania , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) | Unlicensed Dealing in Firearms |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

/s/ Harry Ubele
*Complainant's signature*

Special Agent Harry Ubele, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/28/2021

/s/ Lynne A. Sitarski
*Judge's signature*

City and state: Philadelphia, PA

Hon. Lynne A. Sitarski, U.S.M.J.
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT**

I, Harry Ubele, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with U.S. Homeland Security Investigations (hereinafter referred to as "HSI"), and have been for over seventeen years. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, §2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, execute warrants issued under the authority of the United States and to make arrests for, offenses enumerated in Title 18, United States Code. As a result of my training and experience, and that of other investigators, I am familiar with evidence needed in a criminal complaint affidavit to establish probable cause.

2.      As part of my duties with HSI, I investigate violations of federal criminal law over which the HSI has jurisdiction, including the trafficking of controlled substances and firearms. Throughout my career, I have conducted and participated in numerous complex criminal investigations targeting both domestic and international criminal organizations. I have repeatedly participated in the handling and interviewing of numerous witnesses, cooperating defendants, confidential informants, the preparation and execution of search warrants and arrest warrants, utilization of undercover assets, and the utilization of various forms of surveillance, which have included physical and electronic means. Through my training, education and experience, I have become familiar with the manner in which illegal drugs and firearms are transported, stored, and distributed, the possession and use of firearms in connection with such trafficking, and the methods by which traffickers store and conceal the proceeds of their illegal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents and witnesses, review of recordings and documents and other evidence developed during the investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter. Any observations not made by me, were made by other law enforcement officers involved in the investigation whom I know to be reliable and trustworthy.

4. Based on the facts set forth below, your affiant submits there is probable cause to believe that JOSE HERNANDEZ has committed the crime of unlicensed trafficking in firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

## FACTS ESTABLISHING PROBABLE CAUSE TO ARREST

### Background of the Investigation

5. In approximately December of 2019, HSI began investigating the illegal sale of unregistered firearms in Philadelphia, Pennsylvania, in violation of 18 U.S.C. § 922(a)(1)(A), by several individuals, which came to include HERNANDEZ, and others. One of the individuals under investigation was indicted federally for unlicensed firearm trafficking and, following his arrest, has been actively working with HSI as a cooperating defendant ("the CD").[1]

6. Based on HSI's investigation, and as set forth in greater detail below, these firearms are believed to have been manufactured in Philadelphia from component parts that were purchased from out-of-state suppliers and mailed to Pennsylvania. This type of firearm is

---

[1] Since being released from federal custody, the CD has provided information regarding individuals involved in this and an unrelated investigation that has been verified as accurate by HSI. The CD has a prior adult felony conviction for drug distribution, as well as convictions for witness intimidation and criminal trespass, all in Philadelphia County.

commonly known as a privately made firearm ("PMF"), a SMUF (self-manufactured and unserialized firearms), or a "ghost gun," in that it is not registered and difficult for law enforcement to trace. Based on my training and experience, I know PMFs have become a weapon of choice for many criminals, are often manufactured by or supplied to criminal groups, and have been used in shootings throughout the region.

7. As detailed below, these unregistered "ghost guns" or "PMFs" were sold by HERNANDEZ – who was not licensed to sell firearms – to the CD, who in turn sold them to a cooperating source ("the CS")[2] who was actively working with your affiant and HSI. As set forth below, the CD has identified HERNANDEZ as the person from whom he purchased three PMFs that the CD in turn sold to the CS.

### HERNANDEZ' History of Gun Component Purchases

8. HERNANDEZ, DOB 8/02/1972, has a prior conviction in Atlantic County, New Jersey, for simple assault, for which he received a sentence of 90 days' imprisonment and 18 months of probation. He is not a licensed firearm dealer.

9. Through my contact with the United States Postal Service (USPS), I learned that beginning in April of 2019 and continuing through August of 2020, a large number of packages

---

[2] On May 9, 2019, the CS was indicted by a federal grand jury sitting in the Eastern District of Pennsylvania, for social security fraud in violation of 42 U.S.C. § 408(a)(7)(B) (two counts), and aggravated identify theft in violation of 18 U.S.C. § 1028A (two counts), and was ordered detained pending trial. He began cooperating with the government during a proffer in July of 2019. The CS signed a written guilty plea agreement with the government, after which he pleaded guilty to two counts of social security fraud and one count of aggravated identify theft during a change of plea hearing on November 25, 2019. Following the guilty plea hearing, the CS was released from detention to work as an active cooperator for HSI. The CS has been providing information to members of law enforcement since being released from incarceration. The information provided has been proved to be accurate and correct through independent investigative techniques, including, but not limited to surveillance, investigative reports and the utilization of other confidential sources.

were delivered to HERNANDEZ' residence, 4259 North 3rd Street, Philadelphia, Pennsylvania,[3] from tactical supply stores that sold gun components. Many of these packages were addressed to "Jose Hernandez."

10. Records obtained from the online auction site Ebay as well as online firearm parts and/or accessory retailers Hyve Technologies, CBC Industries, Thunder Tactical, Tyrant CNC, NDZ Performance, GunMag Warehouse, Modulus Arms, and Bear Creek Arsenal, in addition to records of online purchases and payments associated with HERNANDEZ's PayPal account, indicate that:

- Between March 2019 and August 2020, HERNANDEZ appears to have purchased 19 firearm slides compatible with Glock-style PMFs. These slides, if combined with compatible frames and additional Glock-style components, would be sufficient to manufacture 19 Glock-style PMFs.

- Between January 2019 and August 2020, HERNANDEZ purchased approximately 135 additional firearms parts of the types necessary to complete Glock-style and AR-style PMFs. These include multiple barrels, triggers and trigger components, slide locks and slide releases, magazine releases, guide rods, internal springs, pins, and sights all compatible with Glock-style pistols as well as parts such as barrels, gas systems, bolt carrier groups, grips, muzzle brakes, stocks, lower receiver parts kits, safety selector switches, handguards, pins, springs, and other items compatible with AR-style firearms.

- Between January 2019 and March 2020, HERNANDEZ purchased multiple tools consistent with the manufacturing of firearms, including a drill press vise, an upper and lower vise block armorer's toolkit, a roll pin punch set, a roll pin removal set, a Glock front sight removal tool, and a Glock disassembly tool.

- Between December 2018 and August 2020, HERNANDEZ purchased numerous firearms magazines, including approximately 28 magazines for Glock-style pistols and approximately four magazines for AR-style firearms.

- Between January 2019 and April 2020, HERNANDEZ appears to have purchased seven unfinished lower receivers for AR-style firearms. Additionally, on or about November 28, 2020 Doriss RAMOS, believed to be HERNANDEZ's live-in girlfriend/partner, also purchased one unfinished lower receiver for an AR-style firearm. This item was also shipped to the TARGET ADDRESS. These

---

[3] 4259 North 3rd Street is deeded to Pedro Varona. Varona's connection to HERNANDEZ, if any, is not currently known.

4

unfinished lower receivers, if completed and combined with additional AR components, would be sufficient to manufacture eight AR-style firearms.

### The January 15, 2020 Controlled Buy

11. On January 15, 2020, at approximately 4:00 p.m., I met with the CS to attempt a controlled purchase of a firearm from the CD. The CS was provided instructions on how to proceed with the purchase and was given an audio recording device. The CS and the CS's vehicle were searched for contraband with negative results. The CS was provided $1,000 to purchase a handgun from the CD.

12. At approximately 5:10 p.m., the CS picked up the CD in the CS' vehicle, and law enforcement surveillance units followed the CS's vehicle to Bristol Street near North 3rd Street in Philadelphia, where it parked. The CD exited the vehicle and entered HERNANDEZ' home, 4259 North 3rd Street, at approximately 5:18 p.m. The CS remained in his vehicle. Roughly 15 minutes later, the CD was observed leaving HERNANDEZ' home and returning to the CS's vehicle and entering the front passenger seat.

13. Surveillance units followed the vehicle back to the CD's home, where the CD left the vehicle and entered his home. The CS was surveilled to a predetermined location where he met with me. The CS turned over a 9mm handgun with a magazine containing ten 9mm Luger rounds of ammunition. The CS said that he purchased the firearm from the CD. This handgun did not have a serial number, and was determined to be a PMF. It was found to be operable following subsequent testing.

14. Following the CD's indictment and arrest in connection with this PMF sale, the CD informed your affiant that he had purchased this PMF firearm from HERNANDEZ, who he

5

referred to at the time as his "Uncle," while inside of HERNANDEZ' home, prior to selling it to the CS.[4]

15. On or about November 24, 2020, the CD provided your affiant with a cellular phone that he had used to communicate with HERNANDEZ about the purchase of firearms, and the CD consented to a search of this phone. The CD identified HERNANDEZ' phone number as (215) 715-0582.[5] The search of the CD's phone revealed that on January 8, 2020, at approximately 6:08 p.m., the CD sent a text message to HERNANDEZ at (215) 715-0582, which read: "You got anything that's ready now or naw?" At approximately 6:17 p.m., HERNANDEZ used (215) 715-0582 to respond: "I have. The gold and black g26 I stipple the frame one of a kind 1200 can't do cheaper on that one." HERNANDEZ then texted the CD three photographs of firearms to the CD, which included a black and gold/yellow handgun, with hexagonal shapes on the slide, and a unique pattern on the frame. The black and gold/yellow handgun depicted in these photographs matches the PMF that HERNANDEZ sold to the CD approximately one week later, on January 15, 2020.

16. The search of the CD's phone revealed on January 15, 2020, at approximately 4:13 p.m., the CD sent a text message to HERNANDEZ at (215) 715-0582, which read: " Let me know when u home unc ima come see u got some $$$$ for you ����������������". As set forth above, the CD entered HERNANDEZ'

---

[4] SANCHEZ was shown a photograph of HERNANDEZ taken from a law enforcement database, which SANCHEZ identified as the person he referred to as his "Uncle."

[5] Records from the provider, T-Mobile, indicate that (215) 715-0582 is a pre-paid phone registered to "D none Ramos." However, records obtained from a grand jury subpoena to Google LLC revealed that the email address joseelduro1973@gmail.com belongs to Jose HERNANDEZ, with an associated telephone number of (215) 715-0582.

home to purchase a PMF approximately one hour later, at approximately 5:18 p.m., on January 15, 2020.

## The April 3, 2020 Controlled Buy

17. On April 3, 2020, at approximately 1:40 p.m., I met with the CS to attempt another controlled purchase of a firearm from the CD. The CS was provided instructions on how to proceed with the purchase and was given an audio recording device. The CS and the CS's vehicle were searched for contraband with negative results. The CS was provided $1,950 to purchase a handgun from the CD.

18. At approximately 2:12 p.m., the CS picked up the CD in the CS' vehicle, and law enforcement surveillance units followed the CS's vehicle to Bristol Street near North 3rd Street in Philadelphia, where it parked. The CD exited the vehicle and entered HERNANDEZ' home, 4259 North 3rd Street, at approximately 2:20 p.m. Approximately 10 minutes later, at approximately 2:30 p.m., the CD left HERNANDEZ' home carrying a cardboard box under his arm. The CD walked to the CS's vehicle and placed the box in the back seat; the CS then exited his vehicle, opened the driver's side rear door, and appeared to put the box into the trunk through the backseat compartment. The CS and the CD departed the area while under surveillance. The CS then returned the CD to his home.

19. I followed the CS to a predetermined location to retrieve any evidence and to debrief the CS. The CS advised that the box with the gun he purchased from the CD was in the trunk. I retrieved the firearm, which contained an extended magazine with 28 9mm Luger rounds of ammunition. The CS said that the CD also stated that his "uncle" (HERNANDEZ) was getting more 9mm guns that day, and that a lot of people having been buying guns from his "uncle"

during the coronavirus crisis. The firearm was determined to be a PMF. It was found to be operable following subsequent testing.

20. Following the CD's indictment and arrest in connection with this PMF sale, the CD informed your affiant that he had purchased this PMF firearm from HERNANDEZ while inside of HERNANDEZ' home, prior to selling it to the CS.

21. The search of the CD's phone revealed on April 2, 2020, at approximately 3:39 p.m., HERNANDEZ used (215) 715-0582 to text the CD two photographs picture of what appeared to be an AR-15 style firearm that utilized 9mm ammunition, which was black in color and had a blue in color magazine attached with what appeared to be 9mm ammunition inside.[6] The AR-15 style firearm and blue magazine depicted in these photographs matches the PMF that HERNANDEZ sold to the CD the following day, on April 3, 2020.

## The May 11, 2020 Controlled Buy

22. On May 11, 2020, I met with the CS to attempt another controlled purchase of a firearm from the CD. The CS was provided instructions on how to proceed with the purchase and was given an audio recording device. The CS and the CS's vehicle were searched for contraband with negative results. The CS was provided $1,500 to purchase a handgun from the CD

23. At approximately 4:00 p.m., I followed the CS to HERNANDEZ' home, 4259 North 3rd Street, where surveillance was already established.

24. At approximately 4:30 p.m., I observed the CD get out of a nearby car, located on Bristol Street, near North 3rd Street, and walk to the CS's vehicle. The CD retrieved the money

---

[6] A search of the phone the CS used to communicate with the CD shows that on April 2, 2020, at approximately 5:02 p.m., the CD texted the CS what appeared to be the same photograph of this firearm that the CD had received from HERNANDEZ approximately 90 minutes earlier.

from the CS through the front drivers-side window, and then entered HERNANDEZ' home at approximately 4:34 p.m. At approximately 4:39 p.m., the CD left HERNANDEZ' home carrying a white plastic bag. A male, believed to be HERNANDEZ, was seen standing in the doorway, but he did not leave the house. The CD walked back to the CS' vehicle and put the bag through the front driver's side window. On the audio recording, the CD can be heard speaking to the CS through the passenger side window about purchasing a currently incomplete handgun with a bad trigger. The CD then walked back to his car and departed.

25. I followed the CS to a predetermined location to retrieve any evidence and to debrief him. The CS advised that the bag with the gun was on the passenger side front seat, where the CD had placed it. I located the firearm, which was located inside two plastic bags. Inside the bags was a "Glock" gun box, which contained a 9mm handgun, with a gray lower receiver and a black slide, which contained a serial number "#ADXE285" on one side, and the inscription "Glock 43 USA 9x19" on the other side. There was one magazine in the firearm and two additional magazines located in the gun box. There were 16 9mm Luger rounds inside the magazines. The firearm was determined to be a PMF. It was found to be operable following subsequent testing.

26. Following the CD's indictment and arrest in connection with this PMF sale, the CD informed your affiant that he had purchased this PMF firearm from HERNANDEZ while inside of HERNANDEZ' home, prior to selling it to the CS.

## CONCLUSION

27. Based on the foregoing facts, your affiant submits that there is probable cause to believe that JOSE HERNANDEZ willfully engaged in the business of dealing in firearms

without being licensed to do so under the provisions of Chapter 44, Title 18, United States Code, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

Respectfully submitted,

*/s/ Harry Ubele*
HARRY UBELE
Special Agent
U.S. Homeland Security Investigations

Subscribed and sworn to before me
on January 28, 2021

/s/ Lynne A. Sitarski
HON. LYNNE A SITARSKI
United States Magistrate Judge